UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY L. BUTLER, JR. | : | Case No. 1:17-cv-604 |
| 7046 Ruwes Oak Drive | : | |
| Cincinnati, OH 45248 | : | Judge _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | **COMPLAINT WITH JURY DEMAND** |
| | : | **ENDORSED HEREON** |
| **CITY OF CINCINNATI, OHIO** | : | |
| City Hall | : | |
| 801 Plum Street | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| -and- | : | |
| | : | |
| **HARRY BLACK, INDIVIDUALLY** | : | |
| **AND IN HIS OFFICIAL CAPACITY** | : | |
| **AS CITY MANAGER OF THE** | : | |
| **CITY OF CINCINNATI** | : | |
| City Hall | : | |
| 801 Plum Street | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| -and- | : | |
| | : | |
| **SHEILA HILL-CHRISTIAN,** | : | |
| **ASSISTANT CITY MANAGER OF THE** | : | |
| **CITY OF CINCINNATI** | : | |
| City Hall | : | |
| 801 Plum Street | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| Defendants. | : | |

## I. INTRODUCTION

City of Cincinnati Captain Jeffrey Butler brings this action to enforce his constitutional, federal and state law rights arising out of the abuse of power by the City Manager and Assistant

City Manager of the City of Cincinnati, and the illegal conduct of those individuals as part of their conspiracy to retaliate against Captain Butler for challenging their blatant misuse of state tax funds which should have been utilized for emergency services and instead were unlawfully utilized for general City of Cincinnati budget purposes, and the inappropriate expenditure of federal Homeland Security grant funds.

Plaintiff Butler seeks all available remedies, including reclassification to Assistant Chief of Police, all lost wages and benefits, compensatory damages including emotional distress damages, punitive damages and reasonable attorneys' fees and costs.

## II.     THE PARTIES

1.      Plaintiff Jeffrey L. Butler, Jr. ("Captain Butler" or "Plaintiff") is a citizen of the United States and resident of Hamilton County, Ohio. He is employed by the City of Cincinnati as a Police Captain.

2.      Captain Butler is a highly accomplished law enforcement professional who has worked his way up since joining the Cincinnati Police Department ("CPD") in 1986. He became a Police Specialist in 1995, a Sergeant 1996, a Lieutenant in 2001, and a Captain in 2005. He was consistently rated as "exceeds standards" on his annual performance reviews. He comes from a long line of law enforcement individuals in his family covering several generations. Currently, 16 members of Captain Butler's extended family serve (or have served) in law enforcement.

3.      Defendant City of Cincinnati is a municipality organized under the laws of the State of Ohio.

4. Defendant Harry Black is a citizen of the United States and a resident of the State of Ohio, and is the City Manager of the City of Cincinnati. Mr. Black is being sued individually and in his official capacity.

5. Defendant Sheila Hill-Christian is a citizen of the United States and a resident of the State of Ohio, and is the Assistant City Manager of the City of Cincinnati. Ms. Hill-Christian is being sued individually and her official capacity.

### III. JURISDICTION AND VENUE

6. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because Plaintiff's federal claims arise under the laws of the United States.

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims derive from the same operative facts and are so related to his federal claims over which the Court has original jurisdiction that they form a part of the same case or controversy.

8. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff is employed in this Division and District, and the unlawful conduct alleged in this Complaint has taken place, and is taking place, within this Division and District.

### IV. THE FACTS

**A. Captain Butler Cleaned Up The Emergency Communications Center.**

9. Effective January 3, 2016, Captain Butler was assigned to the Emergency Communications Center ("ECC") pursuant to the directive of Defendant City Manager Black and at the request of Cincinnati Police Chief Eliot K. Isaac.

10. Captain Butler had originally been assigned to audit ECC beginning December 8, 2015. As a result of this effort, Plaintiff was transferred to ECC in January 2016 and told to "clean up the ECC."

11. In this position, Captain Butler was responsible for the management of all ECC roles, including budget, discipline, hiring, training and strategic planning.

12. Captain Butler excelled in this role; a fact recognized by Lt. Colonel Dave Bailey in his November 30, 2016 performance review of Captain Butler. In that review, Lt. Colonel Bailey stated:

> "During this period, Captain Butler assumed command of the Emergency Communication Section. This was a daunting assignment given the challenges created by previous administrations. Among the major issues:
>
> - Personnel – morale and insufficient staffing
> - Hiring – new and lateral classes
> - Computer Aided Dispatch System implementation and trouble shooting
> - Standard Operating Procedure Audit and development
> - Overall restructuring of the operation
> - Budget restructuring
> - New Motorola APEX implementation and troubleshooting
> - Training
> - Lack of performance reviews and accountability
>
> Captain Butler has done an outstanding job achieving substantial progress in each of these areas. In particular, the CAD and the Motorola radio migrations were laden with performance issues due in part to poor planning by previous administrators. But under Captain Butler's tenure, personnel have been hired, training has been developed and morale has generally improved. Uniform supervision has been added to the section and the Department has seen a dramatic improvement in overall service delivery."

### B. Captain Butler Should Have Been Promoted to Assistant Chief of Police.

13. Captain Butler's equivalent from the Fire Department at the ECC was Anson Turley.

14. Turley served in the same capacity at the ECC as did Captain Butler. However, the Fire Command at ECC only had 17 persons authorized in their personnel allocation, while the Police Department had 122 persons authorized in their ECC personnel allocation.

15. Turley was promoted to Assistant Fire Chief on April 25, 2016.

16. On August 25, 2016, Captain Butler submitted the paperwork required for a Reclassification Position, establishing that he should be reclassified to Assistant Chief of Police.

17. On September 21, 2016, Captain Butler was advised by email of a new Civil Service/Human Resources Reclassification process.

18. Captain Butler resubmitted the appropriate form on September 25, 2016.

19. Captain Butler inquired of the City of Cincinnati Human Resources office as to the status of his Reclassification request on October 4, 2016.

20. On October 25, 2016, in an internal memorandum, the CPD Personnel Manager concluded that Captain Butler's Reclassification request should be denied.

21. Captain Butler was not informed of that conclusion.

22. Captain Butler again requested to know the status of his Reclassification request on November 15, 2016 and was advised that it had been delivered to the City of Cincinnati Human Resources Department on November 3, 2016.

### C. Harry Black, the City Manager, Refused to Allow Captain Butler's Reclassification to Assistant Chief of Police.

23. On December 6, 2016, Captain Butler met with the City of Cincinnati Human Resources Director Georgetta Kelly regarding the status of his Reclassification request. Ms.

Kelly told Captain Butler that the City HR Department had the request but would not do anything with it, and that he should check with Chief of Police Isaac. Ms. Kelly further noted that Captain Butler did not need a decision from Civil Service regarding his Reclassification request, because "the Chief has the power to make the recommendation to the City Manager" since the Chief has the authority to increase the Assistant Chief complement **if** the City Manager agrees.

24. On December 7, 2016, Captain Butler met with Police Chief Isaac, who advised Captain Butler that Defendant City Manager Black did not wish to increase the complement of Assistant Police Chiefs.

25. Captain Butler filed his notice of appeal on December 7, 2016, which was changed by the City of Cincinnati Human Resources Department to an "appearance request" at the next Civil Service Commission meeting, on December 15, 2016.

26. At that December 15, 2016 Civil Service Commission meeting, the Commission denied Captain Butler's Reclassification request based upon the CPD's October 25, 2016 denial, without a hearing.

**D. Harry Black and Assistant City Manager Sheila Hill-Christian Retaliated Against Captain Butler for his Complaints About City Misuse of 911 Funds.**

27. As a result of his command position at the ECC, Captain Butler became aware that Defendant City of Cincinnati was misusing state funds which were to be earmarked for emergency services under the ECC, such as 911.

28. Defendant City of Cincinnati was using the state 911 Recovery fees in its general budget to pay salaries and for other general budget purposes.

29. In addition, Defendant City of Cincinnati was inappropriately allocating federal Homeland Security grant funds.

6

30. The Homeland Security grant program funds were intended for purchase of a Computer Aided Dispatch ("CAD") system. Although the funds were used to purchase the system, Captain Butler was investigating and voicing concerns about how and why the purchase was made since the partial grant submission paperwork did not make sense or meet the grant guidelines; Captain Butler had identified an unsigned grant submission page (in a related grant) with a fictitious name; the system configuration of the CAD when Captain Butler arrived at the ECC was different than the grant configuration awarded; there were no signed change orders by City officials for appropriately approved changes; and there were no copies of grant expenditures or authorizations in the possession of the Cincinnati Police Department.

31. Upon learning of Defendant City of Cincinnati's misuse/misapplication of these state and federal funds, Captain Butler brought these issues to the attention of City Management, including Defendant City Manager Black and Defendant Assistant City Manager Hill-Christian.

32. In a meeting in March 2016, Defendant Assistant City Manager Hill-Christian told Captain Butler that he should no longer "talk about the Homeland Security grant", described above in Paragraph 30, and about which Captain Butler had complained to City management.

33. In an email on April 10, 2016, Defendant Hill-Christian instructed Plaintiff to "cease the email traffic" regarding his complaints on this issue.

34. On December 7 and 15, 2016, Captain Butler's Reclassification request to Assistant Chief of Police was denied.

35. In late December 2016, Defendant City Manager Harry Black complained that he was "tired of hearing Butler, Butler, Butler …".

36. Effective January 1, 2017, following his complaints to Defendants about their flagrant misuse of state tax funds and federal grants funds, Captain Butler was transferred out of his ECC command with virtually no notice.

37. Captain Butler was denied his reclassification to Assistant Chief of Police, and transferred from his ECC command, in retaliation for voicing complaints to Defendants about the misuse of state tax funds and federal grants funds detailed above.

### E. City Manager Harry Black's Retaliation Against Captain Butler is a Continuation of his Pattern and Practice of Misuse of Funds and Abuse of Power.

38. The retaliation, misuse of funds and abuse of power by City Manager Harry Black, detailed above, is bad enough. However, City Manager Black's abusive behavior toward Plaintiff is merely one example of his pattern and practice of misuse of funds, abuse of power and retaliation against law enforcement officers who challenge Black's unlawful behavior.

39. For example, shortly after he became City Manager in Cincinnati (having left his Finance Director position in Baltimore), City Manager Black insisted that city purchases (including those for law enforcement agencies) go through a purchasing clearing house, BFX, LLC.

40. This process effectively requires that the City pay a 15% mark-up on all purchases run through BFX, LLC.

41. BFX, LLC was incorporated by Al Foxx and is owned by Foxx and his wife.

42. Al Foxx was Public Works Director in Baltimore at the same time that Black was Baltimore's Finance Director.

43. Black, Al Foxx, and Al Foxx's wife are close friends.

44. Black's insistence that City purchases go through the clearing house owned by his close friend inappropriately enriches those friends to the detriment of Cincinnati taxpayers.

45. As another example, the sale of forfeited property and the use of funds derived therefrom is governed by R.C. 2981.12, *et seq*.

46. City Manager Black has insisted that such funds be used to pay Saul A. Green of Miller, Canfield, Paddock & Stone in the amount of $299,760.

47. Such use is not an appropriate use under R.C. 2981.12, *et seq*.

48. As yet another example, on July 1, 2015, Cincinnati City Council passed an ordinance (No. 247-2015) which Mayor John Cranley signed into law, establishing a new Improvement Program Project Account which was funded with $2,000,000 from the unappropriated surplus of the City's General Fund.

49. Pursuant to the ordinance, "proper city officials" were authorized to use and expend the $2,000,000 "for the purpose of purchasing technology and equipment for police cruisers and officers."

50. Despite the clear language of the ordinance, and contrary to the letter and spirit of the ordinance, City Manager Black ordered the expenditure of approximately $800,000 for purposes **other than** the purchase of technology and equipment for police cruisers and officers.

51. Cincinnati Police Lt. Colonel Dave Bailey objected to City Manager Black's inappropriate use of those funds.

52. In retaliation, City Manager Black engineered the reassignment of command of the ECC from Lt. Colonel Bailey to Lt. Theresa Theetge (who had no experience with the management and technology of the ECC).

## V. THE CLAIMS

### A. COUNT ONE
### ABUSE OF POWER

53. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

54. Defendants Black and Hill-Christian, as detailed above, acted beyond the scope of their authority under the City Charter to deny Plaintiff the reclassification to Assistant Chief of Police to which he was entitled, and to transfer him out of his ECC command, without authority to do so, because Plaintiff complained about Defendants' misuse of state tax funds and federal grants funds.

55. As a direct and proximate result of Defendants' unlawful, retaliatory conduct, Plaintiff has suffered injury and damage for which he is entitled to judgment and relief.

### B. COUNT TWO
### VIOLATION OF RIGHT TO FREE SPEECH – 42 U.S.C. § 1983

56. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

57. Plaintiff engaged in the constitutionally protected speech or conduct when he complained of Defendants' misuse of state and federal grants funds.

58. Defendants' actions in denying Plaintiff the reclassification to Assistant Chief of Police to which he was entitled, and transferring him out of his ECC command, in retaliation for his protected speech or conduct, violated Plaintiff's right to free speech on matters of public concern as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

59. Defendants' above-described conduct was intentional, malicious, willful and wanton in nature.

60. As a direct and proximate result of Defendants' unlawful, retaliatory conduct, Plaintiff has suffered injury and damages and is entitled to judgment and relief.

### C. COUNT THREE
### VIOLATION OF SUBSTANTIVE DUE PROCESS – 42 U.S.C. §1983

61. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

62. Defendants' actions deprived Plaintiff of his protected interest in his good name and professional reputation.

63. Defendants' intentional, malicious, and wanton actions effectively foreclosed the opportunity for Plaintiff to advance his career within the law enforcement community, by unlawfully denying his Reclassification to Assistant Chief of Police, in retaliation for voicing complaints to the Defendants about the misuse of state tax funds and federal grants detailed above.

64. As a direct and proximate result of Defendants' unlawful, retaliatory conduct, Plaintiff has suffered injury and damage for which he is entitled to judgment and relief.

### D. COUNT FOUR
### VIOLATION OF PROCEDURAL DUE PROCESS – 42 U.S.C. §1983

65. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

66. Plaintiff has a property interest in the position of Assistant Chief of Police to which he should have been reclassified effective April 25, 2016 as provided by the City Charter.

67. Defendants failed to provide Plaintiff with any pre-deprivation notice or hearing regarding this refusal to reclassify him to Assistant Police Chief, in direct contravention of the City Charter and in violation of Plaintiff's due process rights.

68. Defendants failed to provide Plaintiff with any written basis for the reclassification refusal or any hearing thereon.

69. Defendants likewise failed to provide Plaintiff with any other post-deprivation process, in violation of Plaintiff's due process rights under the Fourteenth Amendment.

70. In denying Plaintiff pre-deprivation and/or post-deprivation process, Defendants violated Plaintiff's procedural due process rights protected by the Fourteenth Amendment.

71. Defendants' above-described conduct was intentional, malicious, willful and wanton in nature.

72. As a direct and proximate result of Defendants' unlawful, retaliatory conduct, Plaintiff has suffered injury and damage and is entitled to judgment and relief.

### E. COUNT FIVE
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

73. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

74. Throughout his career, Plaintiff has had a long-standing record of high achievement and success as a police officer.

75. Plaintiff had a reasonable expectation that he would be reclassified to the appropriate position of Assistant Chief of Police, which would have led to additional career opportunities.

76. Defendants were aware of Plaintiff's expectations.

77. Defendants tortiously interfered with Plaintiff's prospect for future employment in his profession, by unlawfully refusing to approve his reclassification to Assistant Chief of Police.

78. As a direct and proximate result of Defendants' unlawful, retaliatory conduct, Plaintiff has suffered injury and damages and is entitled to judgment and relief.

**WHEREFORE**, Plaintiff Jeffrey Butler, Jr. demands judgment against Defendants as follows:

    a. That Plaintiff be retroactively reclassified to Assistant Chief of Police effective April 25, 2016;

    b. That Plaintiff be awarded compensatory damages including emotional distress damages;

c. That Plaintiff be awarded punitive damages;

d. That Plaintiff be awarded pre-judgment interest;

e. That Plaintiff be awarded front pay;

f. That Plaintiff be awarded reasonable attorney's fees;

g. That Plaintiff be compensated for the adverse tax consequences of receiving lump sum awards rather than compensation over several, separate tax years;

h. That Defendants be enjoined from continuing to misuse the State 911 Recovery fees and the Homeland Security grant program funds;

i. That Defendant Black be enjoined from misusing funds derived from R.C. 2981.12, *et seq*., from improper use of funds under Cincinnati City Ordinance No. 247-2015, and from forcing the City to use the business of his friend Al Foxx for its purchases; and

j. That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

/s/ Brian P. Gillan
Randolph H. Freking (0009158)
Brian P. Gillan (0030013)
Trial Attorneys for Plaintiff
FREKING MYERS & REUL LLC
600 Vine Street, Ninth Floor
Cincinnati, OH 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*randy@fmr.law*
*bgillan@fmr.law*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all matters so triable.

                                        /s/ Brian P. Gillan