**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Jeffrey L. Butler, Jr., | : | Case No. 1:17-cv-00604 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| City of Cincinnati, Ohio, et al., | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. (Doc. 43). Plaintiff filed a Response in Opposition.[1] (Doc. 46). Defendants did not file a Reply and the time to do so, without leave of Court, has passed. *See* S.D. Ohio Civ. R. 7.2(a)(2).

I. **BACKGROUND**

Plaintiff has served in the Cincinnati Police Department ("CPD") since 1986 and has held the rank of captain since 2005. (Doc. 41 ¶¶ 1-2). Defendants are the City of Cincinnati, the former City Manager, Harry Black, the former Assistant City Manager, Sheila Hill-Christian, the Mayor of the City of Cincinnati, John Cranley, and the Chief of Police of the City of Cincinnati, Eliot Isaac. (*Id.* ¶¶ 3-7).

---

[1] Plaintiff's Response exceeds the permissible page length set forth in the Court's Local Rules and the undersigned's Standing Orders, and Plaintiff neither requested nor received leave to file a Response in excess of twenty pages. *See* S.D. Ohio Civ. R. 7.2(a)(3); Standing Order on Civil Procedures, Michael R. Barrett, I.G and I.F. The Court accepts the Response for filing and trusts that Plaintiff will comply with those rules in the future.

Effective January 3, 2016, Plaintiff commanded the city's Emergency Communications Center ("ECC") where he was responsible for the management of all ECC roles for the CPD, including budget, discipline, hiring, training, and strategic planning. (*Id.* ¶¶ 11, 13, 29). Plaintiff alleges that, during this command, he became aware that Defendant City of Cincinnati was misusing both state funds that were earmarked for emergency services and federal grant funds from the U.S. Department of Homeland Security. (*Id.* ¶¶ 29-32). Plaintiff brought the alleged misuse of funds to Defendant Black's and Defendant Hill-Christian's attention and, in March 2016 and April 2016, Defendant Hill-Christian allegedly instructed Plaintiff to stop discussing the claims. (*Id.* ¶¶ 33-35).

On August 25, 2016, Plaintiff submitted a written request to be reclassified from the rank of captain to the rank of assistant chief of police. (*Id.* ¶ 18). He asserts that his equivalent colleague at the Cincinnati Fire Department, who was also stationed at the ECC, received a reclassification to the rank of assistant fire chief in April 2016. (*Id.* ¶¶ 15-17). On September 25, 2016, Plaintiff resubmitted paperwork for his reclassification request in light of a new Civil Service/Human Resources ("HR") Reclassification process. (*Id.* ¶ 20). On October 25, 2016, the CPD's Personnel Manager concluded that Plaintiff's reclassification request should be denied, but did not inform Plaintiff of that decision. (*Id.* ¶¶ 22-23).

On December 6, 2016, Plaintiff met with Defendant City of Cincinnati's HR Director to discuss the status of his reclassification request. (*Id.* ¶ 25). She informed him that HR would not make or issue a decision, and that he should check with Defendant Isaac because only the chief of police has the power to make a recommendation regarding reclassification to the rank of assistant chief of police to the city manager and to increase

the assistant chief complement if the city manager agrees. *Id.* On December 7, 2016, Plaintiff met with Defendant Isaac, who advised Plaintiff that Defendant Black did not wish to increase the complement of assistant police chiefs. (*Id.* ¶ 26). That same day, Plaintiff submitted what he styled as a notice of appeal of Defendant Isaac's denial of his request for reclassification and what HR styled as an appearance request at the next Civil Service Commission meeting. (*Id.* ¶ 27). At the December 15, 2016, Civil Service Commission meeting, the Commission denied Plaintiff's reclassification request, based on the CPD Personnel Manager's October 25, 2016 conclusion, without a hearing. (*Id.* ¶ 28).

Effective January 1, 2017, Plaintiff was transferred from his command in the ECC to a position as the highest-ranking officer in the CPD's Inspection Section. (*Id.* ¶ 38, 59).

On September 12, 2017, Plaintiff filed his Initial Complaint in this matter and included five claims against Defendants related to the denial of his reclassification request: abuse of power; tortious interference with business relations; a 42 U.S.C. § 1983 claim of First Amendment retaliation; and two 42 U.S.C. § 1983 claims for violations of the Fourteenth Amendment. (Doc. 1). He alleges that the denial of his reclassification request and transfer to the Inspection Section were made in retaliation for his complaints about Defendants' misuse of state and federal funds for the ECC. (*Id.* ¶ 39).

Plaintiff subsequently filed a timely First Amended Complaint that included two additional claims: defamation and civil conspiracy. (Doc. 5); *see* FED. R. CIV. P. 15(a)(1)(A). He alleges that, after he filed this lawsuit, Defendants Cranley and Black conspired to orchestrate a distracting smear campaign against him, branding him a "racist," a "bad cop," and someone whose federal lawsuit was meant to undermine the

contracts between minority-owned businesses and Defendant City of Cincinnati. (Doc. 41 ¶¶ 55-56).

In early 2018, after the Court heard oral argument on Defendants' Motion for Judgment on the Pleadings, but before Plaintiff filed his Motion for Leave to File a Second Amended Complaint, Plaintiff was tasked with supervising the semi-annual CPD audit of overtime usage. (*Id.* ¶ 59). Personnel of the CPD's Inspection Section conducted this audit under Plaintiff's command and Executive Assistant Chief of Police David Bailey's oversight. (*Id.* ¶ 60).

Plaintiff alleges that the final February 15, 2018 audit report found that the CPD had incurred significant overtime expenses, often as a result of inappropriate and illegal conduct, especially in the CPD's District 5 that was commanded by Captain Bridget Bardua. (*Id.* ¶ 61); (Doc. 41-1) (Feb. 15, 2018 Semi-Annual Audit of Overtime report). Plaintiff believes that the alleged systemic abuse of overtime in District 5 constitutes felony theft. (*Id.* ¶ 79). He states that he voiced his concerns regarding the alleged overtime abuse directly to Captain Bardua and Defendant Isaac before the audit report was finalized (*id.* ¶¶ 70-72), but they took no remedial action (*id.* ¶¶ 76-77). He also alleges that Captain Bardua and Defendant Isaac have an inappropriate close personal relationship given the chain of command supervisory relationship. (*Id.* ¶¶ 85-90).

Effective March 18, 2018, Plaintiff was transferred from the CPD's Inspection Section to the Cincinnati Police Academy, where he asserts that he has no substantive responsibility. (*Id.* ¶ 97).

In April 2018, Plaintiff filed his Motion for Leave to File a Second Amended Complaint, and the Court later granted that Motion. Plaintiff's Second Amended

Complaint includes four additional claims: a second 42 U.S.C. § 1983 claim of First Amendment retaliation; a second defamation claim; a statutory whistleblower claim; and a common law whistleblower claim. (Doc. 23). He asserts that Defendants marginalized him in retaliation for his complaints about Defendant Isaac's relationship with Captain Bardua, his complaints about Defendant Isaac's failure to act on Captain Bardua's abuse of the overtime system, Plaintiff's role in supervising the audit, and Defendant Isaac's mistaken belief that Plaintiff was involved in the public disclosure of the audit report. (Doc. 41 ¶ 96).

Also in April 2018, Hamilton County Prosecutor Joseph Deters impaneled a Grand Jury due to the allegations in Plaintiff's Second Amended Complaint of felony abuse, and Prosecutor Deters also referred the matter to Ohio Auditor David Yost for investigation. (*Id.* ¶¶ 98, 100). On April 27, 2018, that Grand Jury issued a subpoena for documents related to the February 2018 audit report. (*Id.* ¶ 99). Auditor Yost's investigative team subsequently requested documents related to the February 2018 audit report. (*Id.* ¶ 101).

Plaintiff alleges that at least one Bankers Box containing documents related to the February 2018 audit report went missing after he filed his Second Amended Complaint in this matter. (*Id.* ¶ 101). He asserts that Defendants have known that the Bankers Box was missing since, at least, June 2018 and have done nothing to find it. (*Id.* ¶ 102). In light of Defendants' alleged inaction to find the missing box of documents, in October 2018, Plaintiff asked the Acting City Manager for an external administrative and/or criminal investigation into the matter. (*Id.* ¶ 103); (Doc. 41-2) (written request for external administrative and/or criminal investigation).

In November 2018, Plaintiff filed his Motion for Leave to File a Third Amended Complaint, and the Court later granted that Motion. Plaintiff's Third Amended Complaint includes a spoliation of evidence claim. (Doc. 41). Plaintiff's 12-count Third Amended Complaint brings an abuse of power claim, two First Amendment claims, two Fourteenth Amendment claims, a tortious interference with a business relationship claim, two defamation claims, a civil conspiracy claim, a statutory whistleblower claim, a common law whistleblower claim, and a spoliation of evidence claim. *Id.* He asserts that these claims stem from Defendants' retaliatory conduct against him for reporting corruption and illegal activity, namely his allegations regarding the misuse of state and federal funds in the ECC and his allegations regarding the February 2018 audit report. *Id.*

## II. <u>ANALYSIS</u>

In deciding a Rule 12(b)(6) motion to dismiss, this Court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). To avoid dismissal under Rule 12(b)(6), a plaintiff's complaint must contain "(1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### a. Abuse of Power Claim

Plaintiff brings a claim for abuse of power against Defendants Black and Hill-Christian and asserts that they acted beyond the scope of their authority under the City Charter when they denied his requested reclassification to the rank of assistant chief of police and transferred him out of his ECC command. (Doc. 41 ¶¶ 106-08). He asserts that his abuse of power claim is meant to "highlight Defendants' retaliation against [him] as punishment for his complaints about Defendants' flagrant misuse of [ECC] funding sources and grants" and concedes that this claim is founded on "Defendants' violations of his substantive due process and procedural due process rights." (Doc. 46 PageID 507).

Ohio law does not recognize a standalone abuse of power claim, and Plaintiff cannot state a claim for abuse of power under Ohio law. *See Schwartz v. City of Conneaut, Ohio*, No. 1:09CV1222, 2009 WL 4730594, at *6 (N.D. Ohio Dec. 8, 2009); *Peters v. Ohio Dep't of Nat. Res.*, 2003-Ohio-5895, ¶ 15 ("[N]o Ohio court has ever recognized the existence of the tort of 'abuse of power.'"). To the extent that he argues that this claim is founded on his federal due process rights, the Court will discuss those arguments below. *See Schwartz*, 2009 WL 4730594, at *6 ("an abuse of power claim can be brought in federal court as substantive or procedural due process arguments") (citing *Myers v. Delaware Cty., Ohio*, No. 2:07-CV-844, 2008 WL 4862512, at *9-10 (S.D. Ohio Nov. 7, 2008)). Plaintiff's standalone abuse of power claim fails to state a claim upon which relief can be granted, and dismissal is proper.

### b. First Amendment Claims

Plaintiff brings two claims of First Amendment retaliation pursuant to 42 U.S.C. § 1983. (Doc. 41 ¶¶ 109-13, 144-49). He alleges that, due to his speaking out about

Defendants' misuse of state and federal funds for the ECC and the overtime audit report, Defendants denied his reclassification request, Defendants transferred him out of his ECC command, and Defendant Isaac publicly acted against and chastised him. *Id.*

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A plaintiff must allege two elements to establish a prima facie case under Section 1983: (1) that the action occurred "under color of law"; and (2) that the action was a deprivation of a constitutional right or a federal statutory right. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). There does not appear to be a dispute whether Defendants acted under color of state law and the Court will assume that Plaintiff has sufficiently pled state action for purposes of this Motion. (Doc. 43 PageID 478-83); *see Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012). The parties dispute whether Plaintiff's Third Amended Complaint states plausible deprivations of his First Amendment rights. *Compare* (Doc. 43 PageID 478-83), *with* (Doc. 46 PageID 508-12).

A Section 1983 plaintiff alleging employment retaliation for the exercise of his constitutional right to free speech must plead factual allegations sufficient to establish that (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by his protected

conduct. *Handy-Clay*, 695 F.3d at 539 (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)).

### i. Constitutionally Protected Conduct

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "However, public employees do not forfeit all their First Amendment rights simply because they are employed by the state or a municipality," and "the First Amendment protects a public employee's right, under certain circumstances, to speak as a citizen on matters of public concern." *Id.* (citing *Garcetti*, 547 U.S. at 417). "However, when a public employee speaks as an employee on matters of personal interest, 'a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'" *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)).

"[T]he Supreme Court has established a three-part test for evaluating whether a public employee's speech is constitutionally protected." *Id.* A plaintiff must show (1) that his speech was made as a private citizen, rather than pursuant to his official duties; (2) that his speech involved a matter of public concern; and (3) that his interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* (citing *Garcetti*, 547 U.S. at 417-18).

The inquiry into whether statements were made pursuant to an employee's official duties, and not as a private citizen, is a practical one. *Colorez v. City of Cincinnati*, Case No. 1:17-cv-737, Doc. 14 PageID 84, (S.D. Ohio Aug. 3, 2018) (citing *Garcetti*, 547 U.S.

9

at 427). The U.S. Court of Appeals for the Sixth Circuit ("Sixth Circuit") has identified a number of factors to consider in this inquiry, including: the impetus for the plaintiff's speech, the setting of his speech, the speech's audience, the speech's general subject matter, whether the statements were made to individuals up the chain of command, whether the content of the speech is nothing more than the quintessential employee beef that management has acted incompetently, whether the speech was made inside or outside of the workplace, or whether the speech concerned the subject-matter of the plaintiff's employment. *Handy-Clay*, 695 F.3d at 540-41 (citations omitted) (internal quotation marks omitted). The critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties," and is "not whether [the speech] merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

The Third Amended Complaint states that, before Plaintiff commanded the ECC, he had "been assigned to audit ECC" and, in his position in the Inspection Section, he "was tasked with supervising the semi-annual Police Department audit of overtime usage." (Doc. 41 ¶¶ 12, 59). Defendants assert that Plaintiff's speech was made pursuant to his official duties at the ECC and in the Inspection Section and not as a private citizen. (Doc. 43 PageID 479-81). At this stage in the proceedings, viewing only the facts alleged in the Third Amended Complaint and doing so in a light most favorable to Plaintiff, his specific job duties at the ECC and in the Inspection Section are not so clear such that the Court can find that he spoke pursuant to his official job duties or that Defendants specifically tasked Plaintiff with the speech at issue. *See Colorez*, Case No. 1:17-cv-737, Doc. 14 PageID 85. The Third Amended Complaint "does not include sufficient information regarding the statements' content, context, impetus, setting, or audience from

which the Court could conclude the statements at issue in this case are 'ordinarily within the scope' of [Plaintiff]'s official duties (whatever those duties are)." *Id.* Although the Third Amended Complaint suggests that overseeing the production of the audit report was a part of Plaintiff's job, nothing in the Third Amended Complaint suggests that his allegations about Defendant Isaac's relationship with Captain Bardua or about Defendant Black's misdirection of funds were within Plaintiff's ordinary job duties. *See* (Doc. 41). The Third Amended Complaint provides relatively little information regarding what Plaintiff's job duties at either the ECC or Inspection Section were. (Doc. 41). The facts alleged are sufficient to justify an inference that Plaintiff spoke on the issues alleged as a private citizen concerned about Defendants' misuse of funding and taxpayer monies.

Further, and although Defendants do not contest the second and third prong of the constitutionally protected conduct analysis, the Third Amended Complaint sufficiently alleges concerns about their alleged misuse of funding and taxpayer monies which the Sixth Circuit has recognized are of public concern. (Doc. 46 PageID 510-12); *see Chappel v. Montgomery Cnty. Fire Protection Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997) ("'[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law,' when 'expos[ing] graft and corruption,' and when 'seeing that public funds are not purloined' or wasted.") (quoting *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)); *see also Perry v. McGinnis*, 209 F.3d 597, 607 (6th Cir. 2000) (explaining that, in many cases, due to inadequate factual development, the prong two balancing test cannot be performed on a Rule 12(b)(6) motion).

### ii. Adverse Action

Defendants argue that Plaintiff has not experienced an adverse action because he was, and remains, a police captain with no change in compensation since January 2016. (Doc. 43 PageID 481-82). Plaintiff asserts that the Third Amended Complaint sufficiently alleges that that he suffered economic damages. (Doc. 46 PageID 512). The Third Amended Complaint alleges that Plaintiff has no substantive responsibility at the Police Academy and his transfer there caused him a loss in renumeration (Doc. 41 ¶¶ 97, 161).

An adverse action, in the First Amendment retaliation context, is one that causes "an injury that would likely chill a person of ordinary firmness from continuing to engage in [protected activity]." *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). "[E]xamples of 'adverse action' that would chill a person of ordinary firmness from engaging in protected conduct 'include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote.'" *Crawford v. Columbus State Cmty. Coll.*, 196 F. Supp. 3d 766, 778 (S.D. Ohio 2016) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (en banc)). It is a closer call than the analysis above, but at this stage in the proceedings, taking the allegations in the Third Amended Complaint as true, Plaintiff has sufficiently alleged that he experienced an adverse action that would dissuade any person of ordinary firmness from continuing to engage in free speech. *Cf. Rutan v. Republican Party of Illinois.*, 497 U.S. 62, 110 (1990) (holding that placing employees in dead-end positions and unreasonably denying transfers may constitute an adverse action in the First Amendment retaliation context).

### iii. Motivation

Defendants assert that there is no causal connection between the alleged protected activity and the alleged adverse employment action. (Doc. 43 PageID 482-83). For purposes of this Rule 12(b)(6) Motion, and based on the facts of this case, the Court finds that Plaintiff has sufficiently alleged that his speech was a substantial or motivating factor in Defendants' decision to take the alleged adverse employment action against him. *See Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 181 (6th Cir. 2008); *see also Handy-Clay*, 695 F.3d at 545 ("[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury.").

In sum, Plaintiff alleges plausible First Amendment retaliation violations and dismissal of these two counts is not warranted.

### c. Substantive Due Process Claim

Plaintiff brings one claim for a violation of his substantive due process rights pursuant 42 U.S.C. § 1983. (Doc. 41 ¶¶ 114-17). He alleges that Defendants unlawfully denied his reclassification request, thereby foreclosing any possible career advancement, and deprived him of his protected interest in his good name and professional reputation each in retaliation for his speaking out about Defendants' misuse of funds in the ECC. *Id.* Similar to the First Amendment analysis above, there does not appear to be a dispute whether Defendants acted under color of state law and the Court will assume that Plaintiff has sufficiently pled state action for purposes of this Motion. (Doc. 43 PageID 484); *see Handy-Clay*, 695 F.3d at 539. The parties dispute whether the Third Amended Complaint states a plausible deprivation of Plaintiff's substantive due process rights. *Compare* (Doc. 43 PageID 484), *with* (Doc. 46 PageID 513-15).

With respect to Plaintiff's attempt to bring a substantive due process claim that is based on alleged First Amendment violations, the Court finds that any such claim is impermissibly duplicative. *See Handy-Clay*, 695 F.3d at 547-48 (explaining that Sixth Circuit precedent "precludes reliance on substantive due process standards when evaluating claims covered by explicit constitutional protections."). Plaintiff must invoke the express protections of the First Amendment rather than rely on a substantive due process argument. *See id.* He cannot succeed on a substantive due process claim based on a First Amendment violation, and dismissal of any such claim is proper.

He also contends that his substantive due process rights protect against his loss of the reclassification in rank. (Doc. 46 PageID 514). "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir.1997) (citations omitted). Plaintiff does not argue that the denial of his reclassification request constitutes behavior that shocks the conscience. (Docs. 41, 46). He argues that he has been deprived of a particular constitutional guarantee and states that his "loss of the position to which he was entitled—Assistant Chief—is [ ] protected by his substantive due process rights." (Doc. 46 PageID 514-15) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988) and *Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x. 349, 365-66 (6th Cir. 2012)).

Plaintiff, though, relies on caselaw that "recognizes a narrow substantive due process right to protection against losing one's job because of an independent constitutional violation, such as an equal protection violation." *Hopkins*, 477 F. App'x at 365-66. The Third Amended Complaint does not allege that Plaintiff lost his job. (Doc. 41).

14

It alleges that he did not receive a reclassification to a rank to which he believes he was entitled and that he otherwise remains employed as a captain in the CPD. *Id.* The Court declines to expand substantive due process protection to his alleged loss of a grant of a reclassification request. *See Perry v. Quill*, No. 2:10-CV-78, 2010 WL 3659591, at *5 (S.D. Ohio Sept. 14, 2010) ("In the employment law context, the Sixth Circuit [ ] has rejected attempts to expand substantive due process protection to claims involving property interests in employment."); *see also Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992) (holding that a state-created right to tenured position lacks substantive due process protection); *Charles v. Baesler*, 910 F.2d 1349, 1355 (6th Cir. 1990) (holding that there is no substantive due process protection for state-created promotion rights)); *cf. Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006) (explaining that, generally, "the termination of public employment does not constitute a denial of substantive due process"). Dismissal of this claim is proper.

### d.  Procedural Due Process Claim

Plaintiff brings one claim of a violation of his procedural due process rights pursuant 42 U.S.C. § 1983. (Doc. 41 ¶¶ 118-25). He alleges that he has a protected property interest in the reclassification to the rank of assistant chief of police and Defendants failed to provide him with pre-deprivation and post-deprivation process in violation of the City Charter and his due process rights. *Id.* There does not appear to be a dispute whether Defendants acted under color of state law and, again, the Court will assume that Plaintiff has sufficiently pled state action for purposes of this Motion. (Doc. 43 PageID 484-86); *see Handy-Clay*, 695 F.3d at 539. The parties dispute whether the

Third Amended Complaint states a plausible deprivation of his procedural due process rights. *Compare* (Doc. 43 PageID 484-86), *with* (Doc. 46 PageID 515-17).

Defendants argue that Plaintiff does not have a protected property interest in a promotion, because the rank of assistant chief of police is an unclassified, at-will position and there is no property interest in an unclassified position, and his claim is based on a unilateral expectation to the reclassification. (Doc. 43 PageID 484-86). Plaintiff counters that the CPD's customs, policies, and practices form the basis for his protected property interest and he had more than a unilateral expectation. (Doc. 46 PageID 515-17).

The Court must determine whether a protected liberty or property right is at stake and, if so, what process is due. *Handy-Clay*, 695 F.3d at 546. A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citing *Perry v. Sindermann*, 408 U.S. 593 (1972)). An employer's policies and practices can justify an employee's claim of entitlement to continued employment. *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989). Plaintiff has sufficiently alleged a deprivation of a protected property interest based on Defendant City of Cincinnati's customs and practices in allowing those CPD officers interested in rank reclassifications to submit paperwork in a reclassification process; Defendant City of Cincinnati's request that he resubmit his specific paperwork in light of a new Civil Service/HR reclassification process; the grant of the reclassification in rank to his comparable colleague in the Cincinnati Fire Department; and Defendant City of Cincinnati's providing him with a Civil Service Commission hearing regarding the reclassification denial. (Doc. 41). While the customs and practices that Plaintiff alleges may be difficult to prove at later stages in this matter, the Court assumes

that they exist at this stage. *See Martinez v. City of Cleveland*, No. 1:15-CV-01686, 2016 WL 5338013, at *4 (N.D. Ohio Sept. 23, 2016), *aff'd*, 700 F. App'x 521 (6th Cir. 2017); *see also Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1236 (6th Cir. 1991). Dismissal of this claim is not warranted.

### e. Tortious Interference with a Business Relationship Claim

The Third Amended Complaint alleges that Defendants tortiously interfered with Plaintiff's reasonably expected future employment by denying his reclassification request. (Doc. 41 ¶¶ 126-31). To recover in Ohio on a claim of tortious interference with business relationships, a plaintiff must show: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1006 (S.D. Ohio 2008).[2]

The Ohio Supreme Court held that a plaintiff could not bring an action for tortious interference against her former supervisor, the defendant, because an action did not exist when the act complained of was within the defendant's duties. *Anderson v. Minter*, 291 N.E.2d 457, 461 (1972) (noting, however, that an action may be maintained against an outsider to an employment relationship); *cf. A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (1995) ("Tortious interference with business relationships 'generally occur[s] when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another.'"). Likewise, "[a] person in a supervisory

---

[2] *Cf. Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012) ("The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.").

capacity or other position of authority over the employee cannot be sued for interfering with the employment relationship that it is his duty to monitor, supervise, or enforce." *Slyman v. Shipman, Dixon & Livingston, Co., L.P.A.*, 2009-Ohio-4126, ¶ 12.

As Defendants were Plaintiff's supervisors in the business relationship with which they allegedly interfered, and the decision of whether to reclassify Plaintiff occurred within the employment relationship between Defendants and Plaintiff, Defendants cannot be held liable for tortious interference. *See id.; Anderson*, 291 N.E.2d at 461. The Court is not persuaded by Plaintiff's assertion, without citation to supporting authority, that Defendants are liable because they acted in retaliation and thus outside of their employment duties. (Doc. 46 PageID 518); *see Slyman*, 2009-Ohio-4126, ¶ 12 ("Liability will not arise even in instances where a supervisor's conduct may be characterized as malicious.") (citing *Anderson*, 291 N.E.2d at 461). Defendants' denial of Plaintiff's reclassification request took place in an employment context such that Plaintiff cannot bring a tortious interference claim, and dismissal is proper.

### f. Defamation Claims

Plaintiff brings two defamation claims: one against Defendants Cranley and Black together (Doc. 41 ¶¶ 132-40) and one against Defendant Black separately (*id.* ¶¶ 164-180). Plaintiff clarifies that he brings these two claims as claims of defamation per se. (Doc. 46 PageID 520).

In Ohio, the tort of defamation has four elements: a false and defamatory statement concerning another; unprivileged publication to a third party; fault amounting to at least negligence by the publisher; and either actionability of the statement irrespective of a special harm or the existence of a special harm caused by the publication. *Harris v.*

*Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 611 N.E.2d 955, 962 (1992)). To constitute defamation per se, the "words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to public hatred, contempt or scorn." *Moore v. P. W. Pub. Co.*, 209 N.E.2d 412, 415 (1965). "A statement is defamation per se if it 'tends to injure a person in his or her trade, profession, or occupation . . . [and] both damages and actual malice are presumed to exist.'" *Lennon v. Cuyahoga Cty. Juvenile Court*, 2006-Ohio-2587, ¶ 25 (quoting *Knowles v. Ohio State Univ.*, 2002-Ohio-6962, ¶ 24). Regarding defamation per se, although the law presumes the existence of damages and actual malice, the plaintiff must still present sufficient evidence of the remaining elements of a defamation claim. *Edelstein v. Stephens*, No. 1:17CV305, 2020 WL 1846745, at *10 (S.D. Ohio Apr. 13, 2020).

### i. Defendants Cranley and Black

Defendants Cranley and Black contend that Plaintiff's defamation claim against them constitutes an impermissible recitation of legal conclusions and contains insufficient factual allegations to state a claim. (Doc. 43 PageID 488). The Third Amended Complaint includes three specific statements by Defendants Cranley and Black that Plaintiff argues are actionable and false: that he is "racist," that he is a "bad cop," and that he filed this lawsuit because he wanted to undermine city contracts with minority-owned businesses. (Doc. 41 ¶ 142).

Starting with the first element of defamation—a false and defamatory statement concerning another—the question of whether a given statement is actionable is a matter of law to be determined by the Court. *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d

832, 853 (2012). To determine whether a statement is an actionable false statement of fact, or an opinion protected by the First Amendment, "[c]onsideration of the totality of circumstances to ascertain whether a statement is opinion or fact involves at least four factors. First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared." *Scott v. News-Herald*, 496 N.E.2d 699 (1986).

Use of the term racist "weighs heavily toward actionability," and the more difficult issue in determining whether the term racist is actionable is whether it is verifiable, *i.e.*, objectively capable of proof or disproof. *See Lennon*, 2006-Ohio-2587, ¶ 30. One factor that points towards verifiability is whether a reasonable observer would think that the accusation of racism is based on undisclosed fact. *See id.* Here, the Court finds that a reasonable observer would think that the accusation of racism is based on an undisclosed fact because it is the mayor and the city manager speaking about a high-level city employee to local leaders. In terms of the context of the statement, the mayor speaking on the record to local leaders and the news media suggest that this is more than, for example, the workplace gossip at issue in *Lennon.* Based on the facts alleged in the Third Amended Complaint, and for purposes of this Motion only, the Court find that this specific Plaintiff allegedly being called racist is plausibly defamatory as a matter of law. For similar reasons, the Court finds that this Plaintiff's allegations that Defendant Cranley's and Defendant Black's statements that Plaintiff was a bad cop who acts to undermine city contracts with minority businesses are plausibly defamatory as a matter of law.

Turning to the second element of defamation, the Third Amended Complaint sufficiently alleges publication, as it states that "Defendants published these statements

to various persons, including but not limited to Cincinnati City Council, employees of the City, prominent members of the African-American community, and local news media," and provides a general time-frame, "[s]ince September 12, 2017." (Doc. 41 ¶¶ 133, 135). Regarding the remaining defamation elements, the Third Amended Complaint sufficiently alleges that Defendants Cranley and Black made these statements with actual malice and that these statements are defamation per se. The Court finds that this defamation claim should not be dismissed.

### ii. Defendant Black

Defendant Black argues that Plaintiff's separate defamation claim against him must fail, as the Third Amended Complaint does not sufficiently allege that his statements were about Plaintiff. (Doc. 43 PageID 489). Plaintiff does not respond to this argument (Doc. 46 PageID 518-20), and the Court will construe his silence as a concession. Dismissal of the defamation claim against Defendant Black is proper.

### g. Civil Conspiracy Claim

The Third Amended Complaint includes a state law civil conspiracy claim against Defendants Cranley and Black and alleges that they maliciously conspired to defame Plaintiff through an agreement to publish, and to encourage and compel others to publish, comments about Plaintiff describing him as a "racist," a "bad cop," and someone who intended to undermine the contractual relationship between minority-owned businesses and Defendant City of Cincinnati. (Doc. 41 ¶¶ 141-43).

The Supreme Court of Ohio defines civil conspiracy as "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Dunning v. Varnau*, No. 1:14CV932, 2015

WL 5729332, at *13 (S.D. Ohio Sept. 30, 2015) (quoting *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 534 (6th Cir. 2000)). To state a claim of civil conspiracy, the following elements must be shown: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Id.*

Defendants assert that Plaintiff's claim is barred by the intra-corporate conspiracy doctrine. (Doc. 43 PageID 489-90). "The intra-corporate conspiracy doctrine provides that employees of a corporation or governmental entity cannot conspire among themselves because they are treated as one entity." *Dunning*, 2015 WL 5729332, at *14 (citing *Nuovo v. The Ohio State Univ.*, 726 F. Supp. 2d 829, 845 (S.D. Ohio 2010)). An exception to the doctrine exists when the challenged activity takes place outside the scope of employment. *Id.* (citing *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837 (6th Cir. 1994)). Here, Plaintiff sufficiently alleges that the challenged alleged activity, publishing the above comments about Plaintiff, took place outside of the scope of Defendant Cranley's and Defendant Black's employment. (Doc. 41 ¶ 142). Dismissal is not warranted.

### h.  Statutory Whistleblower Claim

The Third Amended Complaint includes a statutory whistleblower claim against Defendant City of Cincinnati regarding the February 2018 overtime audit report. (Doc. 41 ¶¶ 150-56). Defendants contend that this claim fails, as the Third Amended Complaint does not include sufficient allegations that Plaintiff strictly complied with the requirements of Ohio's whistleblower statute. (Doc. 43 PageID 490-91).

Ohio's whistleblower statute, Ohio Revised Code § 4113.52, "provides a procedure for an employee to follow if the employee becomes aware of a violation of any state or

federal statute, ordinance or regulation, work rule or company policy, that the employee reasonably believes is a criminal offense, or is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, or is a felony." *Keehan v. Certech, Inc.*, No. 5:15-CV-1236, 2015 WL 8483179, at *3 (N.D. Ohio Dec. 10, 2015). "That procedure begins with oral notification of the employee's supervisor, followed by a written report." *Id.* (citing Ohio Rev. Code § 4113.52(A)(1)(a)). The "statute prohibits an employer from taking disciplinary or retaliatory action against an employee for making a report authorized by § 4113.52(A)." *Id.* (citing Ohio Rev. Code § 4113.52(B)). Strict compliance with the dictates of the whistleblower statute is required for an employee to obtain its protection. *Contreras v. Ferro Corp.*, 652 N.E.2d 940, 946 (1995).

According to the Third Amended Complaint, Plaintiff supervised the overtime audit, believed that Captain Bardua's alleged abuse of overtime system constituted felony theft, and orally notified Captain Bardua and Defendant Isaac of his concerns regarding Captain Bardua's overtime abuse. (Doc. 41). The Third Amended Complaint does not allege that Plaintiff drafted, authored, co-authored, or submitted the written audit report to Defendant Isaac. *Id.* In Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, he alleges, for the first time, that, when Defendant Isaac failed and/or refused to acknowledge Plaintiff's concerns about Captain Bardua's improper use of overtime, "Captain Butler and Lt. Col. Bailey issued the Audit Report that they had coauthored." (Doc. 46 PageID 525). The Court declines to consider this argument, as Plaintiff may not use his Response in Opposition to amend his operative complaint in this matter for a fourth time. *See, e.g., Brown v. Whirlpool Corp.*, 996 F.Supp.2d 623, 645 (N.D. Ohio 2014). Because the Third Amended Complaint does not allege that Plaintiff submitted a

written report to his supervisor, the Third Amended Complaint does not sufficiently allege his strict compliance with the Ohio Whistleblower statute, and dismissal of this claim is proper.

### i. Common Law Whistleblower Claim

The Third Amended Complaint includes a common law whistleblower claim, commonly referred to as a *Greeley* claim, against Defendant City of Cincinnati and Defendant Isaac. (Doc. 41 ¶¶ 157-63). Defendant City of Cincinnati and Defendant Isaac argue that this claim fails, as Plaintiff is a classified employee and represented by a union. (Doc. 43 PageID 490). Plaintiff does not respond to this argument (Doc. 46 PageID 522-26), and the Court will construe his silence as a concession. Dismissal of Plaintiff's common law whistleblower claim is warranted.

### j. Spoliation of Evidence Claim

The Court has already found that Plaintiff's intentional spoliation of evidence claim is sufficiently pled such that dismissal pursuant to Rule 12(b)(6) is not proper. (Doc. 40).

### k. Qualified Immunity

The individual Defendants assert that they are entitled to qualified immunity as to Plaintiff's federal claims, as he cannot establish violations of his constitutionally protected rights. (Doc. 43 PageID 492-93). In light of the above holdings regarding Plaintiff's First Amendment retaliation and procedural due process right claims, the Court declines to hold that the individual Defendants are entitled to qualified immunity at this stage in proceedings. *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."); *see also Evans–Marshall v. Bd. of Educ. of Tipp City Exempted*

*Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (explaining that the fact-intensive nature of the qualified immunity test make it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*") (emphasis in original).

### I. State Law Immunity

The individual Defendants also argue that they are entitled to immunity pursuant to Ohio Revised Code § 2744.09(A)(6). (Doc. 43 PageID 493-94). With the exception of Defendant Hill-Christian, the Court finds that Defendants are not entitled to individual immunity under Ohio law at this juncture in light of Plaintiff's allegations in the Third Amended Complaint that the individual Defendants acted maliciously. (Doc. 41 ¶¶ 112, 124, 137, 140, 124, 148); *see Colorez*, Case No. 1:17-cv-737, Doc. 14 PageID 92. The Court agrees that the state law claims against Defendant Hill-Christian should be dismissed.

### III. <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 43) is **GRANTED in part and DENIED in part**, as discussed above. It is further **ORDERED** that the Clerk shall update the docket in this matter to reflect that the Court **previously GRANTED** Defendants' Motion to Stay Discovery (Doc. 49) at the February 11, 2020 telephone status conference. *See* Feb. 11, 2020 Docket Entry. The Court will schedule a telephone conference to discuss the calendar in this matter shortly.

**IT IS SO ORDERED.**

_s/ Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court